## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 23-10808-JGR |
| NORTH SHORE ASSOCIATES, LLP | ) | |
| EIN: | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### PLAN OF REORGANIZATION

### DATED JULY 12, 2023

North Shore Associates, LLP ("NSA" or "Debtor"), Debtor and Debtor-in-Possession hereby proposes, pursuant to Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization.

### ARITCLE I

### INTRODUCTION

NSA is a limited liability partnership that owns certain improved property located in Loveland, Colorado that is operated as a nursing home facility by related entity and tenant, North Shore Manor, Inc. ("NSM"). This Plan provides for the reorganization of the Debtor under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor shall restructure its debts and obligations. A more complete history of the Debtor, its business history and operations, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

### ARTICLE II

### DEFINITIONS

2.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries,

or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

2.02 - <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.03 - <u>Allowed Secured Claim</u> shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 - <u>Avoidance Actions</u> means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07 - Classes 1- 3 Claims and Interests shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.09 - Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - Debtor shall mean the Debtor who is proposing this Chapter 11 Plan.

2.12 - Disclosure Statement shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.13 - Disputed Claim means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

2.14 - Effective Date of the Plan shall mean the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.15 - Exculpated Claim means any claim related to any act or omission in connection with, relating to or arising out of the Debtor's restructuring efforts prior to the Petition Date and through the Effective Date of the Plan, including without limitation formulation, preparation, dissemination, negotiation or filing of the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, the filing of the Chapter 11 Case, the pursuit of confirmation of this Plan; provided, however, that Exculpated Claims shall not include any act or omission that is

3

determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law.

2.16 - <u>Exculpated Party</u> means each of: (i) the Debtor, and (i) the current officers, directors, partners, members, managers, employees, advisors and attorneys in each of their respective official capacities acting on behalf of the Debtor and who participated in the reorganization process on behalf of and in the interest of the Debtor, and specifically Mayer Kohn, David Fogel, Boruch Levin, Robert Church, Mark Kohn, Joshua Levin, both in his individual capacity and as trustee of the Joshua Levin Trust, Linda Fogel, Beth Radetsky, Channa Levin, Mosh Levin, Esther Levin, Menachem Levin, Shoshanna Levin, Baruch Levin, Lynn Levin, and all professionals retained in the bankruptcy case and the employees of such professionals

2.17 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.18 - <u>Interest</u> shall mean any ownership interest or any other instrument evidencing any ownership in the Debtor's assets.

2.19 - <u>NSM</u> shall mean related entity and tenant, North Shore Manor, Inc., which filed its own voluntary petition for relief pursuant to Chapter 11, Subchapter V of the Bankruptcy Code on March 6, 2023, Case No. 23-10809-JGR.

2.20 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.21 - <u>Petition Date</u> shall mean the date on which the voluntary Petition was filed by the Debtor, March 6, 2023.

2.22 - <u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.23 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.24 - <u>Property</u> shall mean the Debtor's improved real property located at 1365 West 29th Street, Loveland, Colorado 80538.

2.25 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.26 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

2.27 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.28 - <u>Tax Claim</u> means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.29 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.30 - <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE III

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2) or 507(a)(8) of the Code.

<u>Class 1</u> – The Allowed Secured Claim held by Wapello Holdings, Inc.

<u>Class 2</u> – The Allowed Secured Claim held by Larimer County Treasurer

<u>Class 3</u> – The Allowed Claims held by general unsecured creditors.

<u>Class 4</u> – The Interests in NSA.

## ARTICLE IV

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

4.1 - The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims.  Such Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed.

4.2 - The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, if any, shall be paid in full over a period not to exceed five (5) years following the Petition Date.  The Debtor does not anticipate that any Tax Claims exist.

4.3 - The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE V

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

5.1 -   **Class 1, Secured Claim of Wapello Holding, LLC.**   Class 1 consists of the secured claim of Wapello Holding, LLC or its successor in interest based on the loan and deed of trust previously held by BOKF, NA dba Bank of Oklahoma. Class 1 is impaired by the Plan.  The Class 1 claim will be treated under this Plan as follows:

6

a.  The principal amount of the Class 1 Secured Claim will be allowed (i) in an amount to be determined by the Court on or before the Confirmation Date; or (ii) an amount agreed upon by the Debtor and the Class 1 Claimant on or before the Confirmation Date.  The Debtor reserves the right to object to the Class 1 Claim to the extent there are applicable defenses to the Claim.

b.  The Class 1 Claim will bear interest at the rate of: (i) 3.9% per annum commencing on the Effective Date of the Plan in accordance with the Loan Agreement; or (ii) if the Class 1 Claimant objects to such rate in writing and serves a copy of such objection on the Debtor at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 1 Claimant.

c.  Beginning the first full month following the Effective Date of the Plan, Class 1 Claim will be amortized and paid in equal monthly payments based upon a ten (10) year amortization, however, the Class 1 Claim shall be due and payable in a single payment on the earlier of: (i) the refinance of the Class 1 Claim; (ii) the sale of the Property; or (iii) the five (5) year anniversary of the Effective Date of the Plan.

d.  The Class 1 shall retain its liens except for the release provisions set forth in paragraph 9.3 and shall remain in effect until the Class 1 Claim is satisfied or the underlying Property is sold.

e.  Any payments made on account of the Class 1 Claim as a result of NSM's guarantee of the claim shall be applied first to the principal balance due on account of the Class 1 Claim, and then to any interest due if any.  Any payments received from NSM shall not advance or eliminate any monthly payments due from the Debtor.

f.  The Debtor shall be entitled to prepay the Class 1 claim without premium or penalty at any time after the Effective Date of the Plan.

5.2 -  **Class 2, Secured Claim of Larimer County Treasurer.**  Class 2 consists of the allowed secured claim of the Larimer County Treasurer based on the statutory lien

for 2022 property taxes. Class 2 is impaired by the Plan. The Class claim will be treated under this Plan as follows:

a. The principal amount of the Class 2 Claim will be allowed in the amount due on the Effective Date of the Plan, including any accrued statutory interest.

b. The Class 2 Claim shall maintain the liens held on the Petition Date and shall continue to accrue interest at a statutory rate until the Class 2 Claim is paid in full.

c. The Class 2 Claim shall be paid in full, including any accrued but unpaid interest within ten (10) days following the Effective Date of the Plan.

# ARTICLE VI
## SPECIFICATION AND TREATMENT OF
## UNSECURED CREDITOR CLAIMS

6.1 - **Class 3, General Unsecured Creditors.** Class 3 consists of those general unsecured creditors of NSA holding Allowed Claims, if any. Class 3 is impaired under the Plan. Class 3 General Unsecured Creditors shall receive payment in full of their Allowed Claims on the three (3) month anniversary of the Effective Date of the Plan.

# ARTICLE VIII
## SPECIFICATION AND TREATMENT OF CLASS 4 INTERESTS

7.1 - Class 4 includes the Interests in NSA held by the Partners. Class 4 is unimpaired. On the Effective Date of the Plan, Class 4 Interest Holders shall retain their Interests in NSA, subject to the terms of the Plan.

# ARTICLE IX
## MEANS FOR THE PLAN'S EXECUTION

8.1 - **Operation of Business**.  The Debtor shall be empowered to take such action as may be necessary to perform its obligations under this Plan.

8.2 - **Effectuating the Plan.**  On the Effective Date of the Plan, Mayer Kohn, Boruch Levin, and David Fogel shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to execution of documents until such time as the designated Plan administrators resign or are replaced by a simple majority vote of the Partners.

8.3 - **Sale of Property.**  In the event the Debtor elects to sell the Property in order to effectuate payments under the Plan, such sale shall be free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) and shall utilize the sale and bid procedures attached hereto as Exhibit C.

8.4 - **Disputed Claim Procedure**. Distributions to any class of creditor will only be made on account of Allowed Claims.  In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held in an interest bearing bank account until the Claim is Allowed or disallowed.  If Allowed, the Claim will be paid its appropriate share of the withheld payment.  If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants, or if all holders of Allowed Claims have been paid in full, paid to the Debtor.

8.5 - **Claims and Litigation Bar Date and Standing**.  All Claim Objections and in the case must be filed no later than 30 days following the Effective Date.  Avoidance Actions in the case must be filed by the later of (i) the limitation period set forth in § 546(a) of the Code, or (ii) ninety (90) days following the Effective Date of the Plan. The Debtor shall have standing to commence, prosecute, and settle claim objections and avoidance actions without need for Court approval.

8.6 - **Administrative Expense Bar Date**.  All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 30 days following the Confirmation Date.

8.7 - **Monthly Installments.** Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan. The Debtor shall then have a fifteen day grace period within which the monthly payment must be received by the payee before the Debtors shall be in default, unless a longer period is specified elsewhere in the Plan.

8.8 - **Final Decree.** The Debtor will request entry of an order closing its case and entering a Final Decree on or before the later of the date all Claim objections and any pending litigation is concluded or sixty (60) days after the Effective Date of the Plan.

8.9 - **Quarterly Fees.** Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

8.10 - **Contractual Relationship.** The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and his creditors. In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default. Upon the Debtor's failure to cure the default within such ten day period, the creditor may proceed to exercise their rights and remedies.

8.11 - **Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

8.12 - **Independent Provisions.** Should it be determined by the Court that any provision of the Plan is impermissible or grounds for the denial of confirmation, the

Debtor shall have the right, but not the obligation, to delete the impermissible provision and proceed with confirmation of the Plan provided that deletion of the offensive provision would result in a confirmable Plan.

8.13 - **Avoidance Actions.**  The Debtor has authority post-confirmation to pursue all Avoidance Actions for the benefit of creditors and the enhancement of distributions under the terms of the Plan.  The Debtor shall have sole authority to determine whether to pursue through litigation or settle any avoidance action.  The Debtor may retain counsel to recover the Avoidance Actions on reasonable terms without need for Court approval of fees or costs.

8.14 - **Professional Retention Post-Confirmation.**  Court approval shall not be required for either professional retention or compensation following the Effective Date of the Plan.

8.15 - **Exculpation. Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, or liability for any Exculpated Claim, except for gross negligence or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law). Each Exculpated Party has, and upon entry of the Order of Confirmation, shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law with regard to the solicitation and distribution of this Plan, and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan.**

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1  - On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases listed in Exhibit A attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date.  On the date of the entry of an Order confirming the Plan, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding

upon the Debtor and the other parties thereto.  Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. § 365(b) and (f).

10.2 - On the Effective Date of the Plan, the Debtor will reject all executory contracts and unexpired leases to which he is a party which are listed in Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the Confirmation Date.  Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. §365.  Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. §365 and the Rules.

10.4 - **Claims Arising from Rejection.**  All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.  Any claims not filed within such time shall be forever barred against the Debtor, his estate and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as Class 4 unsecured Claims.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1   **Revestment.**  The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan or Code.  Notwithstanding this provision, Avoidance Actions shall remain assets of the estates through their conclusion by way of litigation and collection or settlement.

11.2   **Retention of Jurisdiction**.  Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.  Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

2.  Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(2), including compensation of the parties entitled thereto;

3.  Resolution of any disputes regarding interpretation of the Plan;

4.  Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

5.  Modification of the Plan pursuant to 11 U.S.C. §1127;

6.  Adjudication of any cause of action brought by the Debtor-in-Possession, the reorganized Debtor, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

7.  Entry of a final decree.

11.3 - **Satisfaction of Claims.**  The Debtor shall receive a discharge on the Effective Date of the Plan pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan. During the time period from the Confirmation Date through the Discharge Date, no creditor affected by the Plan shall have any relief to pursue any pre-petition claim against the Debtor and all such claims shall remain stayed as to collection other than through payments made pursuant to the Plan.

11.4    **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.5    **Notices.**  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

      a.      To:
            North Shore Associates, LLP
            201 Columbine Street, Suite 15
            Loveland, CO 80538-2561

            With a copy to:
            Keri L. Riley, Esq.
            Kutner Brinen, P.C.
            1660 Lincoln St., Suite 1720
            Denver, CO 80264
            Email:klr@kutnerlaw.com

      b.      To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.6 - **Successors and Assigns**.  The Plan will be binding upon the Debtor, any creditor affected by the Plan and his heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within six months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Termination**.  Any Creditors Committee appointed in the bankruptcy case shall terminate on the Effective Date.

11.9 - **Liability**. Except as set forth in this Plan, neither the Debtor, any Committee appointed nor any of their agents, managers, representatives, attorneys, accountants or advisors shall have or incur any liability for any past, present or future actions taken or omitted to be taken under, in connection with, related to, affecting or arising out of the bankruptcy case or this Plan except for claims based on gross negligence or willful misconduct.

11.10 – **Closing of Case.**  The Debtor may close the case at the Court at any time following Plan Confirmation.  The Debtor will retain the right to reopen the case for the purpose of having his discharge enter once he has made all payments to unsecured creditors.

**ARTICLE XII**

**CONFIRMATION REQUEST**

12.1 - The Debtor, as proponent of the Plan, request confirmation of the Plan pursuant to 11 U.S.C. §1129.  The Debtor will solicit acceptance of the Plan after its Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest.  In the event the Debtor does not obtain the necessary acceptances of its Plan, he may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b).  The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.

**[signatures on page to follow]**

DATED: July 12, 2023

JOSHUA A. LEVIN TRUST DATED
JANUARY 1, 2020 AS AMENDED FBO
JOSHUA A. LEVIN

BY: _____ Trustee
Chandra Levin, Trustee

JOSHUA A. LEVIN 2018 TRUST

BY: _____ Trustee
Joshua A. Levin, Trustee

_____
Menachem M. Levin

_____
Shoshanna Levin

_____
Baruch Levin

Lynne Levin _____

ESTHER LEVIN TRUST

BY: _____
Mosh Levin, Co-Trustee

BY: _____
Esther Levin, Co-Trustee

_____
Linda Fogel

_____
Mark Kohn

_____
Beth Radetsky

Keri L. Riley, Esq.
Kutner Brinen, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone:  303- 832-2400
Email: klr@kutnerlaw.com
ATTORNEYS FOR NORTH SHORE ASSOCIATES, LLP
DEBTOR AND DEBTOR-IN-POSSESSION

16

**EXHIBIT A**

**Executory Contracts and Unexpired Leases Assumed**

1.      All contracts and leases previously assumed or for which a motion to assume is pending.

2.      All leases and contracts that are not specifically rejected.

**EXHIBIT B**

**Executory Contracts and Unexpired Leases Rejected**

A.     All leases and contracts previously rejected by Court Order.

**EXHIBIT C**

1.     The Debtor shall retain a broker ("Broker") to market and sell substantially all of its assets ("Assets").

2.     The Broker shall market the Debtor's assets and to the extent that any offers are received, the Broker shall within 90 days of its retention (the "Stalking Horse Deadline").

3.     If the Broker does not produce any offers that are acceptable to the Debtor in its sole and absolute discretion by the Stalking Horse Deadline, then the Debtor may terminate the sale process.

4.      If the Debtor accepts an offer by the Stalking Horse Deadline, the Broker in conjunction with the Debtor, shall identify an initial bidder (the "Stalking Horse Bidder") for substantially all of the Debtor's assets (the "Assets"), whose offer shall be subject to higher or otherwise better competitive bids (the "Stalking Horse Bid").

5.     After identification of the Stalking Horse Bidder, the Broker shall continue to market the Assets for an additional 90 days (the "Bid Materials Deadline").

6.     An auction shall be conducted (the "Auction") in the event the Debtor receives multiple Qualified Bids (as defined below) for the Assets.

7.     Set forth below are the proposed procedures to be employed with respect to the sale of the Assets to the Successful Bidder (as defined below), which are designed to facilitate a full and fair process and maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate.

<u>Bidders</u>

8.     In order to participate in the sale process, each interested person or entity (a "Bidder") must deliver (unless previously delivered) to Debtor and the Broker the Required Bid Materials (as defined and detailed below).

9.     A Bidder that delivers the Required Bid Materials whose financial information demonstrates the financial capability of the Bidder to consummate the sale, and that Debtor, in consultation with the Broker, determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale within an acceptable time frame shall be deemed a " Qualified Bidder."  The bid shall be deemed a "Qualified Bid."

<u>Required Bid Materials</u>

10.    All bids must be received by the Bid Deadline (as defined below) and include the following information and documents (the "Required Bid Materials"):

(i)      A letter stating (A) the purchase price proposed to be paid by the Bidder, (B) that such Bidder is prepared to enter into a legally binding purchase agreement, (C) that the Bidder's offer is irrevocable until the Assets on which the Bidder is submitting a bid have been sold pursuant to the closing of the sale, unless such Bidder is deemed to have submitted the Successful Bid or the Back-up Bid (each as defined below) in accordance with these procedures, in which case such Bidder's offer is irrevocable until two (2) business days after the closing (D) any amount of a credit bid by a secured creditor of the Debtor; and (E) that such bid is unconditional and is not subject to any financing contingency.

(ii)     An executed confidentiality agreement in form and substance acceptable to Debtor;

(iii)    The most recent financial statements of the Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial statements of the equity holder(s) of the Bidder, and such other financial disclosure acceptable to, or requested by, the Debtor, which information shall demonstrate the financial capability of the Bidder to consummate the purchase of the Assets (including evidence that the Bidder has adequate financing for the transaction), including without limitation, financial statements that are either audited by outside accountants or an authorized representative of the Bidder shall certify that the financial statements required hereby are true and correct;

(iv)    In the event the Debtor enters into a purchase agreement with a Stalking Horse Bidder, the purchase price submitted by any Bidder must be equal to or greater than the sum of (a) the purchase price set forth in such purchase agreement, (b) any break-up fee, (c) any expense reimbursement and (d) the Overbid Amount (as defined below).

(v)     In addition, in the event a Stalking Horse Bidder is designated for the Assets, a duly executed copy of a purchase agreement and a redline of the Bidder's proposed purchase agreement over that of the purchase agreement with the Stalking Horse

Bidder. If no Stalking Horse Bidder is designated for the Assets, a duly executed copy of a proposed purchase agreement. A commitment to close on the sale as soon as reasonably practicable following the entry of the order approving the sale.

(vi) A deposit (a "Deposit") in the amount of 10% of the purchase price proposed by the Bidder made payable to Broker, which shall be maintained by Broker in a segregated account, not subject to the claims, liens, security interests or encumbrances of any party. Deposits shall be returned to all Bidders other than the bid for the Assets that is deemed to be the highest and best offer(s) (the "Successful Bid" and the "Successful Bidder") and the second highest and best offer for the Assets (the "Back-up Bid" and the "Back-up Bidder") within three (3) business days after entry of the order approving the sale. If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing in accordance with the purchase agreement between the Debtor and such Successful Bidder, and, within three (3) business days after the closing of the Assets to the Successful Bidder, the Back-up Bidder's Deposit shall be returned to it. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder and the Debtor is not then in material breach of the purchase agreement, the Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder and such Deposit irrevocably will become the property of the Debtor and shall not be credited against the purchase price of the subsequent buyer (in addition to the Debtor reserving all other rights and remedies against the Successful Bidder). In such instance, the Back-up Bidder's deposit shall be applied to the purchase price at closing of the sale with the Back-up Bidder;

(vii) A list of the Debtor's executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtor (the Debtor makes no representations that any contracts or leases are assignable);

(viii) For bids that are not a Stalking Horse Bid, a written acknowledgement that its bid is not conditioned upon any bid protections, such as a  break-up fee, termination fee, expense reimbursement or similar type of payment;

(ix) Written evidence of the Bidder's available cash or a commitment for financing or other evidence of proposed purchaser's ability to consummate the proposed transaction;

(x) Full disclosure of the identity of each entity or person is a part the Bidder that is bidding for the Assets or otherwise participating with such bid, and the complete terms of any such participation; and

(xi) Evidence that the Bidder has the necessary internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained.

3

11.    A Bidder that desires to be participate at the Auction shall on or before the Bid Materials Deadline deliver written and electronic copies of its Required Bid Materials, except that the Deposit shall be delivered only to Broker, to:

> DEBTOR CONTACT INFO
>
> BROKER CONTACT INFO

12.    Any Bidder that provides a Qualified Bid by the Stalking Horse Bidder Deadline shall be permitted to be considered as a Stalking Horse Bidder.   Any Bidder that provides a Qualified Bid by the Bid Materials Deadline shall be permitted to participate at the Auction.

Designation of Stalking Horse Bidder

13.    The Debtor shall designate the highest and best Qualified Bid and the Bidder shall be deemed the Stalking Horse Bidder for the purpose of establishing a minimum acceptable bid with which to begin the bidding at the Auction.

The Auction and Auction Procedures

14.    If more than one Qualified Bid has been timely received by the Debtor for the Assets, the Debtor shall conduct the Auction for the Assets.

15.    The Auction shall be conducted at the offices of Broker or as otherwise designated by the Debtor in writing to every Bidder.

16.    Only the Debtor, its counsel, the Broker, and Qualified Bidders will be entitled to attend, participate and be heard at the Auction, and only Qualified Bidders will be entitled to make any subsequent overbids at the Auction. Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. The Auction shall be an open bidding process in the presence of all other Qualified Bidders for a particular Lot.

17.    The Debtor may permit a Qualified Bidder to bid by telephone, in person or any combination thereof.

18.   At the commencement of the Auction, bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid for the Assets, and will subsequently continue in minimum increments of at least $50,000 higher than the previous Qualified Bid (the "Overbid Amount"), plus the initial Overbid Amount shall include any break-up fee and expense reimbursement of $20,000. The bidding shall not end until all bidders have submitted their last and best offers.

19.   As soon as practicable after the conclusion of the Auction, Debtor and the Broker shall (i) review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest or otherwise best offer for the purchase of the Assets and the second highest and best offer for the purchase of the Assets.

Acceptance of Qualified Bids

20.   The Debtor shall sell the Assets to the Successful Bidder.

21.   The Debtor, in consultation with its Broker, shall determine which Qualified Bid, if any, is the highest or otherwise best offer.

22.   If such Successful Bidder fails to consummate an approved Sale, the Debtor is authorized to deem the Back-up Bid as the Successful Bid, and the Debtor is authorized, but not required, to consummate the sale with the Back-up Bidder.

Modifications

23.   The Debtor may amend or supplement these Sale Procedures at any time in any manner that is consistent with these Sale Procedures and will best promote the goals of the sale process.